IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ADINA DAVIS,                         )
                                     )
          Plaintiff,                 )
                                     )
v.                                   )     No. 2:20-cv-00632-SRW
                                     )
REVERSE MORTGAGE SOLUTIONS,          )
                                     )
          Defendant.                 )

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Adina Davis, an Alabama citizen, originally filed this action on August 11, 2020, in the circuit court of Chilton County, Alabama, against Defendant Reverse Mortgage Solutions ("RMS"), a Delaware company, which has its principal place of business in Texas. (Doc. 1-2; Doc. 5, at 4).[1] Plaintiff seeks injunctive and declaratory relief to prevent Defendant from entering and trespassing on residential property allegedly belonging to her, and she also seeks compensation for damage to any windows, doors, doorknobs and/or locks resulting from any alleged trespass. (Doc. 1-1). Defendant removed the action on August 28, 2020, to this court under 28 U.S.C. § 1332, the federal diversity statute. (Doc. 1). On September 16, 2020, RMS asserted counterclaims to judicially establish its interest in the property located at 4384 County Road 85, Clanton, Alabama 35046 (the "property"). (Doc. 5). Defendant seeks declaratory relief that the mortgage on the property is a valid and enforceable lien against the property, that the foreclosure sale on the mortgage was validly conducted, and that the foreclosure deed conveyed title to the property to Defendant. *Id.* at 9. In the alternative, Defendant seeks reformation of the mortgage and the foreclosure deed, or equitable relief in the form of a constructive trust or equitable lien, or for

---

[1] Citations are to the court's ecf pagination.

equitable subrogation. *Id*. at 10-11. The parties have consented to Magistrate Judge jurisdiction. (Docs. 12 and 13).

Before the court is Plaintiff's motion to dismiss Defendant's counterclaim (Doc. 19), which essentially disputes Defendant's interest in the property and challenges the validity of the mortgage and foreclosure deed based on the legal description of the property in those documents. In response, Defendant contends that Plaintiff's motion is void of any substantive argument, case law, or relevant commentary to support her motion, and that, aside from a generalized denial of Defendant's allegations, the motion fails to address any of the actual factual allegations supporting Defendant's claim of a valid and enforceable interest in the subject property. (Doc. 21, at 3-4).

For the reasons set forth below, the court concludes that Plaintiff's motion is due to be denied.

I.     **Background[2]**

In 1973, Plaintiff's father, Ronnie Dale Lawrence (the "Decedent"), took title to a parcel of land now located at 4384 County Road 85, Clanton, Alabama 35046, by and through a deed. (Doc. 5, at ¶ 4). On or around December 21, 1993, the Decedent took title to additional property surrounding the 4384 County Road 85 property by and through a warranty deed. *Id*. at ¶ 5. On August 16, 2004, the Decedent obtained a $43,500 home equity line of credit from Countrywide Home Loans, Inc., which was secured by a mortgage on the 4384 County Road 85 property. *Id*. at ¶ 6; Doc. 5-1, at 2-8. The property described as collateral for the home equity line of credit was the same property described in the 1973 deed. *Id*. at ¶ 6.

_____

[2] These facts are gleaned exclusively from the allegations in the counterclaim and any documents that are attached to the pleadings or that are referenced in the counterclaim and central to Defendant's claim. They are the operative facts for the purposes of the court's ruling on the motion to dismiss.

The Decedent owned and occupied the property as his principal residence. (Doc. 1-3, at 3). On or around July 2, 2015, the Decedent obtained a reverse mortgage from One Reverse Mortgage, LLC, by executing a fixed-rate home equity conversion note with a maximum principal amount of $198,000.00. (Doc. 5, at ¶ 7; Doc. 5-1, at 10). The reverse mortgage was secured by a fixed-rate home equity conversion mortgage ("HECM") that identified the property as collateral. (Doc. 5-1, at 10, 19-20). According to the terms of the loan agreement, with a few exceptions that not applicable here, the borrower's death would trigger the note's becoming due and payable. *Id*. at 12-13. The mortgage was subsequently transferred and assigned to Defendant RMS. *Id*. at 29.

Defendant alleges that, although the parties intended the HECM mortgage to encumber the subject property, the HECM mortgage contained only the additional property that was included in the 1993 deed, but did not include the house. (Doc. 5, at ¶ 8). According to Defendant, when the HECM loan was originated, proceeds from the loan were used to pay off the entirety of the Decedent's August 16, 2004 home equity line of credit in the amount of $44,137.47, and the parties to the HECM loan contemplated that the HECM mortgage would be a first priority lien on the property. *Id*. at ¶ 9; Doc. 5-1, at 22-27.

Defendant alleges that, from the outset, the Decedent intended to secure the HECM loan with his personal residence. *Id*. at ¶ 10. As support, Defendant asserts the following: (1) the Decedent submitted a residential loan application for the HECM loan on his primary residence – 4384 County Road 85, Clanton, AL, Chilton, 35046; (2) the originating lender obtained an appraisal of the property to serve as collateral to the HECM loan, which valued the collateral at $132,000 and noted that the site area was 1.12 acres and contained a three-bedroom two-bath single-level "ranch" style house; (3) thereafter, the Decedent obtained a homeowner's insurance policy on his residence that expressly named Defendant as the insured mortgagee for the residence, which was renewed for the duration of the loan; and (4) the Decedent certified on an annual basis

that he occupied the property as his primary residence, which was a requirement of the HECM loan agreement. *Id*. at ¶¶ 11-14.

The Decedent died on November 24, 2018. *Id*. at ¶ 15. On December 3, 2019, the property was sold at a foreclosure sale to Defendant, the mortgagee and highest bidder, for $104,726.88. (Doc. 5-1, at 29-30). On December 13, 2019, a foreclosure deed was recorded in the probate office of Chilton County, Alabama, memorializing the sale. *Id*. at 29-31. On June 16, 2020, Plaintiff recorded an affidavit of heirship in the probate records of Chilton County, Alabama, claiming to be the sole heir of the Decedent. *Id*. 33-35. On July 6, 2020, Plaintiff recorded a warranty deed in the probate office of Chilton, County, Alabama, asserting her interest in the property as the sole intestate beneficiary of her father's estate. *Id*. 37-39.

## II.    Legal Standard

"A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." *United States v. Zak*, 481 F. Supp. 3d 1305, 1307 (N.D. Ga. 2020) (citation and internal quotation marks omitted). To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the counterclaim plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 570 (2007). The standard for a motion to dismiss under Rule 12(b)(6) was explained in *Twombly,* and refined in *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all the allegations contained in a [counterclaim] is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a [counter] plaintiff armed with nothing more than conclusions. Second, only a [counterclaim] that states a plausible claim for relief survives a motion to dismiss.  Determining whether a [counterclaim] states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the [counterclaim] has alleged – but it has not shown – that the pleader is entitled to relief.

*Iqbal,* 556 U.S. at 678-79 (citations and internal edits omitted).

The *Twombly-Iqbal* two-step analysis begins "by identifying the allegations in the [counterclaim] that are not entitled to the assumption of truth" because they are conclusory. *Id.* at 680; *Mamani v. Berzain,* 654 F. 3d 1148, 1153 (11th Cir. 2011) ("Following the Supreme Court's approach in *Iqbal,* we begin by identifying conclusory allegations in the [counterclaim]."). After conclusory statements are set aside, the *Twombly-Iqbal* analysis requires the court to assume the veracity of well-pleaded factual allegations, and then to determine whether they "possess enough heft to set forth 'a plausible entitlement to relief.'" *Mack v. City of High Springs,* 486 F. App'x 3, 6 (11th Cir. 2012) (citation omitted.) "To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' … that allows the court to draw the reasonable inference that the [counter] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted). Establishing facial plausibility, however, requires more than stating facts that establish mere possibility. *Mamani,* 654 F. 3d at 1156 ("The possibility that – *if* even a possibility has been alleged effectively – these [counter] defendants acted unlawfully is not enough for a plausible claim.") (emphasis in original). Counter plaintiffs are required to "allege more by way of factual content to nudge [their] claim[s] … across the line from conceivable to plausible." *Iqbal,* 556 U.S. at 683 (internal editing and citation omitted.).

In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the counterclaim, and matters properly subject to judicial notice. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (A "court may consider a document attached to a motion to

dismiss . . . if the attached document is (1) central to the [counter] plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged. . . . [A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a [counterclaim] and no party questions those contents, we may consider such a document provided it meets the centrality requirement[.]") (citation omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). In considering a motion to dismiss, this court accepts all of the allegations in the counterclaim as true and construes them in the light most favorable to the counter-plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The court need not, however, accept legal conclusions couched in the form of factual allegations. *See Diverse Power, Inc. v. City of LaGrange, Georgia*, 934 F.3d 1270, 1273 (11th Cir. 2019) (citing *Twombly*, 550 U.S. at 555).

## III.   Analysis

Plaintiff's motion is devoid of any citation to law and is essentially a general denial of and a dispute with Defendant's allegations in its counterclaim. Plaintiff's motion consists of the following paragraphs:

1. The documents and exhibits provided by the RMS in its counterclaim coupled with its pleadings fail to state a claim for which relief can be granted. The documents if authenticated would tend to show that the Decedent and the RMS entered into a Reverse Mortgage for one of two parcels of land owned by the Decedent.

2. The property alleged to have been conveyed is the parcel that does not contain the residence. This is what the documents show.

3. RMS seek reformation and other relief when the documents show the manifest intention of the parties was to encumber the parcel that excluded the home.

4. The RMSs also request that this court determine the intention of the Decedent.

5. The Davis avers that the Decedent made know his intentions by signing the documents conveying the parcel without the home.

6. If there was an error by the draftsman and if said errors caused the agreement to be ambiguous, it is well established under Alabama law that any ambiguity shall be construed against the drafting party, here RMS.

(Doc. 19, at 1-2)(sic).

In its first counterclaim, Defendant requests a declaration that the HECM mortgage is a valid and enforceable lien against the property, that the foreclosure sale on the HECM Mortgage was validly conducted, and that the foreclosure deed conveyed title to the property to Defendant. (Doc. 5, at ¶ 25). Under Alabama law, parties "whose rights, status, or other legal relations are affected by a . . . contract" may seek a determination of "any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." Ala. Code § 6-6-223.

Defendant alleges that the mortgage references the loan collateral as the Decedent's residence at 4384 County Road 85, Clanton, AL, Chilton. Defendant also alleges that the Decedent intended to secure the HECM loan with his personal residence, citing the following in support of this assertion: (1) the Decedent submitted a residential loan application for the HECM loan on his primary residence – 4384 County Road 85, Clanton, AL, Chilton, 35046; (2) the originating lender obtained an appraisal of the property to serve as collateral to the HECM loan, which valued the collateral at $132,000 and noted that the site area was 1.12 acres and contained a three bedroom two bath single-level "ranch" style house; (3) thereafter, the Decedent obtained a homeowner's insurance policy on his residence that expressly named Defendant as the insured mortgagee for the residence, which was renewed for the duration of the loan; and (4) the Decedent certified on an annual basis that he occupied the property as his primary residence, which was a requirement of the HECM loan agreement. (Doc. 5, at ¶¶ 11-14). Accepting Plaintiff's allegations as true, and considering the documents referenced in its counterclaim and attached to the pleadings, the court

finds that Defendant has sufficiently alleged facts to state a claim for relief that is plausible on its face.

In counterclaim two, Defendant seeks, in the alternative, a reformation of the HECM mortgage and the foreclosure deed due to an alleged mistake on the part of the draftsman or a mutual mistake of the parties to the HECM mortgage. (Doc. 5, at ¶¶ 28-32). Alabama law provides that

> When, through fraud, or a mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a deed, mortgage, or other conveyance does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, insofar as this can be done without prejudice to rights acquired by third persons in good faith and for value.

Ala. Code § 35-4-153. "The Alabama Supreme Court has specifically recognized that 'if the intent was to convey the property as it was known to exist, but the mistake was in the description, reformation is proper.'" *S. States Bank v. Holley*, No. 3:18-CV-5-WKW, 2018 WL 4782267, at *3 (M.D. Ala. Sept. 12, 2018), *report and recommendation adopted*, No. 3:18-CV-5, 2018 WL 4778051 (M.D. Ala. Oct. 3, 2018) (quoting *Beasley v. Mellon Fin. Servs. Corp.*, 569 So. 2d 389, 393-94 (Ala. 1990)) (citation and emphasis omitted).

Defendant asserts that the reformation of the HECM mortgage and foreclosure deed to describe the property correctly in the legal description is justified to reflect accurately the agreements and true intentions of the parties to the HECM mortgage since clear, cogent, and convincing evidence establishes that all parties to the HECM mortgage intended the instrument to encumber the property. (Doc. 5, at ¶¶ 30, 32). Defendant alleges that the parties' intentions are reflected by the property address in the document, the Decedent's loan application, the HECM loan agreement, the Decedent's homeowner's insurance policy identifying Defendant as the insured mortgagee, and the agreed principal amount of the HECM loan based on an appraisal of the Decedent's personal residence on which he certified on an annual basis that he occupied it as

his primary residence. *Id*. at ¶¶ 11-14. Based on the foregoing, the court finds that, as to its second counterclaim, Defendant has sufficiently alleged facts to state a claim for relief that is plausible on its face.

As to counterclaim three, Defendant seeks, in the alternative, equitable relief in the form of a constructive trust or equitable lien granting Defendant a first position lien on the property relating back to the date when the HECM mortgage was recorded, or for equitable subrogation based on proceeds from the HECM loan that were used on the payoff of the Decedent's August 16, 2004 home equity line of credit in the amount of $44,137.47. *Id*. at ¶¶ 37-38. "'A constructive trust will be found when property has been either acquired by fraud, or where in the absence of fraud it would not be equitable to allow it to be retained by him who holds it.' In essence, a constructive trust is imposed to prevent unjust enrichment." *Bros. v. Fuller*, 607 So. 2d 135, 137 (Ala. 1992) (citations omitted). Defendant plausibly alleges that the HECM Loan satisfied the Decedent's prior debt obligation, which would remain as a lien on the property but for the HECM loan funds.

Based upon the factual allegations in the counterclaim as previously discussed, the court finds that Defendant has sufficiently alleged facts to state a claim for relief that is plausible on its face as to counterclaim three.

## IV.    Conclusion

Accordingly, for the reasons stated above, it is

ORDERED that Plaintiff's motion to dismiss (Doc. 19) is **DENIED**.

DONE, on this the 17th day of March, 2022.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge