**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **ADINA DAVIS,** | ) | |
| | ) | |
| **Plaintiff/Counter-Defendant,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20-cv-632-CWB** |
| | ) | |
| **REVERSE MORTGAGE SOLUTIONS,** | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff.** | ) | |

## MEMORANDUM OPINION AND ORDER

Adina Davis ("Plaintiff") filed this action in the Circuit Court of Chilton County, Alabama on August 11, 2020 (Doc. 1-1), and Reverse Mortgage Solutions timely removed proceedings to this court on August 28, 2020 (Doc. 1).  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, both parties thereafter consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Docs. 12 & 13).  Now ripe for determination is a motion for summary judgment filed by Reverse Mortgage Solutions (Doc. 36), which has been fully briefed (Docs. 37, 45 & 46).  For the reasons set forth below, the court finds that summary judgment is due to be granted.

**I.      Jurisdiction and Venue**

Subject matter jurisdiction is conferred by 28 U.S.C. § 1332(a), as Plaintiff has stipulated that  there is a complete diversity of citizenship (Doc. 15-1 at ¶ 2) and the court has found the amount in controversy to exceed $75,000.00 exclusive of interest and costs (Doc. 18 at pp. 6-8). The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.  *See* 28 U.S.C. § 1391; Fed. R. Civ. P. 4(k)(1)(A).

## II.     Factual Background

This action involves competing claims to ownership of certain real properly located in Chilton County, Alabama.

Plaintiff's parents first took title to a portion of the property by Warranty Deed in September 1973.  (Doc. 37-1 at p. 18).  Plaintiff's parents later acquired a surrounding portion by Warranty Deed in December 1993.  (Doc. 37-1 at p. 25; *id.* at pp. 15 & 29).  The two portions eventually were merged into single tax parcel, # 14-10-08-28-0-000-015.00, by the Chilton County Tax Assessor.  (*Id.* at pp. 15 & 23).  At all relevant times, the portion of the property acquired in September 1973 has contained a dwelling.  (Doc. 45-4 at p. 5).

Plaintiff's mother died on or about October 6, 2009.  (Doc. 37-1 at p. 30).  By virtue of survivorship provisions in the September 1973 deed (*id.* at p. 18) and the December 1993 deed (*id.* at p. 25), Plaintiff's father became the sole owner of the property at that time.

In February 2015, Plaintiff's father applied for a reverse mortgage against the property— using a form entitled "Residential Loan Application for Reverse Mortgages," providing a "Subject Property Address" of 4384 County Road 85, and verifying the property as his "Primary Residence."  (Doc. 37-3 at pp. 2-3; *see also id*. at p. 12).  An appraisal performed as part of the approval process described the property as consisting of 1.12 acres with a dwelling.  (*Id*. at p. 16).  The appraised value for the property, including the dwelling, was reflected as $132,000.00.  (*Id*. at p. 17).  That value in turn was used to prepare a Conditional Commitment Direct Endorsement Statement of Appraised Value for purposes of obtaining FHA insurance.  (*Id*. at p. 45).  Proof of homeowner's insurance coverage was submitted (*id*. at p. 49), and both the appraisal report and the loan application referred to a "Year Built" of 1975 (*id*. at pp. 3, 16).

The reverse mortgage loan was consummated on July 2, 2015.  (Doc. 37-3 at pp. 60-87).  Payment terms were set out in a promissory note (*id*. at p. 60) and separate Home Equity Conversion Loan Agreement (*id*. at p. 76).  Repayment was secured by a Fixed Rate Mortgage encumbering "the following described real property located in Chilton County, Alabama, with an address of:  4384 County Road 85, Clanton, AL 35406" and "described more fully on Exhibit A attached to and hereby incorporated into this Mortgage."  (*Id*. at p. 64).  Exhibit A identified the mortgaged property by its commonly known address of 4384 County Road 85 and by reference to tax parcel number 1008280000015000.  (*Id*. at p. 73).  However, Exhibit A also included a metes and bounds description that described <u>only</u> the portion of the property that had been acquired through the December 1993 deed; it did not include the September 1973 portion upon which the dwelling was constructed.  (*Id*.; *compare* Doc. 37-1 at p. 25).[1]

Plaintiff's father died on November 24, 2018.  (Doc. 37-1 at p. 30).  Because both the promissory note and the corresponding mortgage contemplated immediate payment in full upon death of the borrower (Doc. 37-3 at pp. 60, 66), Reverse Mortgage Solutions called the loan due and payable (*id*. at p. 99).  Reverse Mortgage Solutions thereafter deemed the loan in default for non-payment (*id*. at p. 113) and proceeded to conduct a foreclosure sale on December 3, 2019 (*id*. at p. 117).  Reverse Mortgage Solutions was the high bidder at the sale and took title to the property by Foreclosure Deed.  (*Id*. at p. 116).  Consistent with Exhibit A to the mortgage, the metes and bounds description in the Foreclosure Deed encompassed only the portion of the property that had been acquired through the December 1993 deed.  (*Id*. at p. 117).

---

[1] Servicing of the reverse mortgage loan was transferred to Reverse Mortgage Solutions on or about July 9, 2015.  (Doc. 37-2 at p. 5, ¶ 19; *see also* Doc. 1-4 at p. 2).

On July 6, 2020, Plaintiff recorded an Affidavit stating her heirship and asserting a claim of ownership to the portion of the property acquired through the September 1973 deed.  (*Id*. at p. 120).  Plaintiff subsequently recorded a Warranty Deed purporting to convey the same portion to herself.  (*Id*. at p. 124).

## III.   Legal Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party … .  [A fact] is 'material' if it might affect the outcome of the case under the governing law."  *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has satisfied that burden, the nonmovant is required to cite portions of the record showing a genuine dispute of material fact.  *Id.* at 324.  The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts," and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (internal citations omitted). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish a genuine dispute of material fact, the nonmovant must produce evidence such that a reasonable trier of fact could return a verdict in his favor.  *See Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

In determining whether a genuine dispute of material fact exists, the court must view all of the evidence in a light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmovant's favor.  *See McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see also* Fed. R. Civ. P. 56(a).  Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV.    Discussion

Plaintiff contends that she is the fee simple owner of that portion of the property acquired by her parents in September 1973, *i.e.*, the portion that contains the dwelling.  (Doc. 1-1 at pp. 1-2).  Plaintiff cites the metes and bounds property description in the mortgage and the Foreclosure Deed as the basis to challenge any claim to ownership by Reverse Mortgage Solutions. (Doc. 1-1 at p. 2).  For relief, Plaintiff requests both a declaration of ownership in her favor and an injunction prohibiting interference by Reverse Mortgage Solutions.  (Doc. 1-1 at pp. 2-3).  Plaintiff also has included a claim to recover any damages that Reverse Mortgage Solutions might have caused to the property.  (*Id*. at p. 4).

Reverse Mortgage Solutions conversely has asserted a counterclaim to establish that its mortgage validly encumbered the entirety of the property and that "omission of the legal description contained in the 1973 Deed … [did] not impair [its] security interest in the Property." (Doc. 5 at p. 9).  Reverse Mortgage Solutions further desires to have the court declare that the Foreclosure Deed granted it title to both the September 1973 parcel and the December 2013 parcel. (*Id*. at p. 9).  In the alternative, Reverse Mortgage Solutions seeks to have the mortgage and the Foreclosure Deed reformed "to correctly describe the Property in the legal description" and to

"accurately reflect[] the agreements and true intentions of the parties." (*Id*. at p. 10).  As an additional alternative, Reverse Mortgage Solutions asserts that "[a] constructive trust or equitable lien should be declared upon title to the Property." (*Id*. at p. 11).

The parties agree that the portion of the property described by metes and bounds in Exhibit A to the mortgage consists solely of a yard and pool.  (Doc. 45 at p. 4; Doc. 45-1 at p. 5).  The parties further agree that the portion omitted from the metes and bounds description in Exhibit A contains the dwelling.  (*Id*.).  There likewise is no dispute before the court as to the authenticity or content of any of the documents reflecting the reverse mortgage loan transaction.  The parties instead base their competing arguments squarely upon those undisputed materials of record.  Indeed, Plaintiff has candidly acknowledged that she possesses no additional knowledge or information about the transaction beyond what appears in the documents.  (Doc. 45 at p. 5; Doc. 45-1 at pp. 3-4).

The court thus finds that there is no genuine dispute as to any material fact and that Alabama law[2] guides the appropriate disposition.  Under Ala. Code § 35-4-153, courts are authorized to reform real estate documents in circumstances where—due to a mutual mistake—the executed documents fail to reflect the true intentions of the parties:

> When, through fraud, **or a mutual mistake of the parties**, or a mistake of one party which the other at the time knew or suspected, a deed, mortgage or other conveyance does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, insofar as this can be done without prejudice to rights acquired by third persons in good faith and for value.

---

[2] Because this is a diversity action seeking to establish ownership rights in Alabama real property, the court applies Alabama substantive law.  *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Eres v. Progressive Am. Ins.*, 998 F.3d 1273, 1278 n.4 (11th Cir. 2021).

6

Ala. Code § 35-4-153 (emphasis added).  The Alabama Supreme Court has explained reformation on grounds of mutual mistake as follows:

> [I]f the intent was to convey the property as it was known to exist, but the mistake was in the description, reformation is proper.  *McClintock on Equity,* Ch. 8, § 95 at 258 (1948). (Emphasis added.) Such an error establishes mutuality of mistake, and, when one seeks reformation it is immaterial who employed the draftsman. See *Clemons v. Mallett,* 445 So. 2d 276 (Ala.1984). Where the sole ground for reformation is mistake, the mistake must be mutual as to all of the parties, but only in the sense that they must all have agreed to the same terms and have mistakenly assumed that those terms were properly expressed in the instrument. … Whenever there has been a mistake in a deed so that it fails to express what the parties intended, a court of equity may, as between the parties, reform it in accordance with the transaction as it was actually agreed upon. See *City of Oneonta v. Sawyer,* 244 Ala. 25, 12 So. 2d 82 (1943).

 *Beasley v. Mellon Fin. Servs. Corp.*, 569 So. 2d 389, 393-94 (Ala. 1990) (italics in original); *see also In re: Hagendorfer*, 803 F.2d 647, 648-49 (11th Cir. 1986) ("The primary requirement of this statute is proving a mutual mistake occurred between the parties and that the mortgage does not express the true intent of the parties.") (citing *Touchstone v. Peterson,* 443 So.2d 1219, 1222 (Ala. 1983)).  The burden lies with the party seeking reformation to prove such a mutual mistake by "clear, convincing, and satisfactory evidence."  *Id*. (citing *Touchstone*, 443 So. 2d 1219).

Beginning with the initial loan application, the undisputed evidence of record is clear, convincing, and satisfactory that the dwelling was a key component of the transaction.  The application—which tellingly was titled "Residential Loan Application for Reverse Mortgages"—lists the subject property as a "Primary Residence" that was built in 1975 with an estimated value of $180,000.00.  (Doc. 37-3 at pp. 2-3) (emphasis added).  Plaintiff's father executed a verification of occupancy at the time of the application to certify that "I/We currently own and occupy the above-referenced property as our principal residence" (*id*. at p. 12) and similarly executed a Certificate of HECM Counseling in his capacity as "Homeowner" (*id*. at p. 14).

As part of the loan underwriting process, an appraisal was performed on the entirety of the property, which was identified as a 1.12 acre parcel with an existing dwelling of 1,906 square feet built in 1975.  (*Id*. at p. 16).  The appraisal also indicated a value of $132,000.00.  (*Id*. at p. 17).  The same square footage and value were then used in the conditional commitment submitted to the FHA.  (*Id*. at p. 45).  Ultimately, the FHA issued insurance (*id*. at p. 89), and loan advances were approved up to a total of $198,000.00 (Doc. 37-3 at p. 60).

The corresponding mortgage that secured repayment of those advances expressly contemplated that the property being pledged as collateral would include the dwelling: "Borrower shall occupy, establish, and use the Property as Borrower's Principal Residence after execution of this Security Agreement and Borrower … shall continue to occupy the Property as Borrower's Principal Residence for the term of the Security Instrument."  (*Id*. at p. 65; *see also id*. at p. 67: "Borrower shall complete and provide to the Lender on an annual basis a certification … stating whether the property remains the Borrower's Principal Residence … .").[3]  Plaintiff's father thus submitted annual certifications that "I (we) continue to occupy the property identified above as my (our) principal residence" (*id*. at pp. 95-97) and had Reverse Mortgage Solutions listed annually as mortgagee on his homeowner's insurance coverage (*id*. at pp. 92-93).

Considering the consistency of the undisputed materials of record, a reasonable factfinder could reach no conclusion other than that the mortgage was intended to encumber the entirety of the property.  *See Federal Land Bank of New Orleans v. Williams*, 186 So. 689, 691 (Ala. 1938) (reversing and rendering in favor of reformation where "the acts and conduct of all parties to the

---

[3] The mortgage provides that the term "'Principal Residence' shall have the same meaning as in the Loan Agreement."  (*Id*. at p. 65).  Under the Home Equity Conversion Loan Agreement, "Principal Residence" is defined as "the dwelling where a borrower … maintains his or her permanent place of abode, and typically spends the majority of the calendar year." (*Id*. at p. 76).

transaction lead to the conclusion that it was the homestead which was intended to be described in the mortgage"). Not only would it be unreasonable to conclude that potential repayment obligations totaling $198,000.00 would be secured by only a small yard and swimming pool, the type of FHA-insured reverse mortgage loan at issue in this case is only available when secured by a borrower's principal residence. (Doc. 37-2 at p. 4, ¶ 9). *See also* 12 U.S.C. § 1715z-20(d)(3) ("To be eligible for insurance under this section, a mortgage shall … be secured by a dwelling that is designed principally for a 1- to 4-family residence in which the mortgagor occupies 1 of the units"); 24 C.F.R. § 206.39(a) ("The property must be the principal residence of each borrower … at closing"); 24 C.F.R. § 206.45(b) ("The property shall include a dwelling designed principally as a residence … .").

Having concluded that the undisputed evidence clearly, convincingly, and satisfactorily establishes a mutual mistake in the property description such that the mortgage meets the criteria for reformation as a matter of law, the issue becomes whether the Foreclosure Deed—which was infected by the same erroneous property description—may also be reformed. Alabama law answers that inquiry in the affirmative. *See Williams*, 186 So. 689. In *Williams*, a mortgagee brought suit to reform both a mortgage and the related foreclosure deed. *Id*. at 690. The loan application indicated that the borrower lived on the property, which consisted of a dwelling and surrounding acreage enclosed by fence. *Id*. When a survey was performed after foreclosure, however, it was discovered that the property description in the mortgage failed to encompass the particular lot upon which the borrower was residing. *Id*. at 691. The Alabama Supreme Court reversed the trial court and rendered judgment to grant reformation. *Id*. When the borrower raised the argument on application for rehearing that "reformation should be confined to the mortgage, and should not embrace the foreclosure deed," the court confirmed that the mortgagee was

entitled "to a decree of reformation <u>both</u> as to the mortgage <u>and</u> the foreclosure deed."  *Id*. at 692

(emphasis added).  The same result is appropriate here.[4]

The reasons expressed above also compel entry of summary judgment as requested by

Reverse Mortgage Solutions on Plaintiff's competing claims for injunctive and declaratory relief.

Plaintiff's Count I seeks an injunction that would bar Reverse Mortgage Solutions from entering

or modifying the disputed portion of the property, *i.e.*, the portion acquired by her parents under

the September 1973 deed.  (Doc. 1-1 at pp. 2-3).  Plaintiff's Count II seeks a declaration of rights

in the disputed portion of the property.  (*Id*. at p. 3).  The conclusion that the mortgage and the

Foreclosure Deed are subject to reformation therefore is dispositive of all claims asserted in

Plaintiff's Count I and Count II.

So too is the court's conclusion on the issue of reformation dispositive of Plaintiff's

Count III, which seeks to recover for "any and all damages to the [disputed property] … such as

damage to any windows, doors, doorknobs and or locks."  (Doc. 1-1 at p. 4).  The record is devoid

of evidence that any such damage occurred prior to the time that the reverse mortgage loan was

deemed to be in default, and Alabama law is clear that default serves to perfect legal title and

bestow a right to possession in favor of the mortgagee.  *See U.S. Bank, N.A. v. Shepherd*,

---

[4] The court rejects Plaintiff's argument that she is entitled to protection as a bona fide purchaser. Although Ala. Code § 35-4-153 curtails the right of reformation when it would prejudice "rights acquired by third persons in good faith and for value," the undisputed facts reflect that Plaintiff does not occupy such status.  *See Sunshine Bank of Ft. Walton Beach v. Smith*, 631 So. 2d 965, 968 (Ala. 1994) ("The appellants urge that to allow reformation in this case would prejudice their rights as acquired through their judgments against Kemp. This contention is incorrect, however, because the appellants <u>gave no value</u> for their alleged rights in the property.") (emphasis added); *see also Lykins v. McGrath*, 184 U.S. 169, 173 (1902) ("A person who is a mere volunteer, having acquired title by <u>gift</u>, <u>inheritance</u>, or some kindred mode, cannot come within the scope of the term bona fide purchaser. To enable the grantee to claim protection as a bona fide purchaser he must have parted with something possessing an actual value, capable of being estimated in money, or he must on the faith of the purchase have changed, to his detriment, some legal position that he before had occupied.") (internal quotation marks and citation omitted) (emphasis added).

202 So. 3d 302, 3012-13 (Ala. 2015) (reversing monetary judgment on claims for trespass and wantonness because a mortgagee has legal right to possession after default).  Alabama law equally is clear that a subsequent reformation is "effective as of the date of the instrument to be reformed." *Id*. at 313 n.7 (quoting *Monroe v. Martin*, 726 So. 2d 701, 703 (Ala. Civ. App. 1998)). Accordingly, Reverse Mortgage Solutions cannot be liable for any alleged damage to the property under the circumstances at issue in this case.

**V.     Conclusion**

For the reasons stated above, it is hereby **ORDERED** that the motion for summary judgment (Doc. 36) filed by Reverse Mortgage Solutions is **GRANTED** as follows:

1. Reverse Mortgage Solutions is entitled to reformation of the Fixed Rate Mortgage (Doc. 37-3 at pp. 64-74) recorded in the Office of the Judge of Probate for Chilton County, Alabama at Book: 2015 Page: 194169 and the Foreclosure Deed (Doc. 37-3 at pp. 116-18) recorded in the Office of the Judge of Probate for Chilton County, Alabama at Book: 2019 Page: 226280 such that those documents shall contain the metes and bounds description for both the parcel acquired through the September 1973 deed and the parcel acquired through the December 1993 deed;

2. Reverse Mortgage Solutions is entitled to summary judgment in its favor as to Plaintiff's claims for injunctive and declaratory relief; and

3. Reverse Mortgage Solutions is entitled to summary judgment in its favor as to Plaintiff's claim for damages.

It is further **ORDERED** that the alternative claims for relief by Reverse Mortgage Solutions are **DENIED AS MOOT**.   A final judgment will be entered by separate Order.

**DONE** this the 14th day of March 2023.

**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**